[Cite as *State v. Bly*, 2014-Ohio-1261.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                         :

       Plaintiff-Appellee,                     :

v.                                                          :           No. 13AP-909
                                                                    (C.P.C. No. 12CR-6602)
Gregg A. Bly,                                        :

       Defendant-Appellant.                 :           (REGULAR CALENDAR)

                                                            :


---

D E C I S I O N

Rendered on March 27, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard,*
for appellee.

*Sanjay K. Bhatt* and *Jerry C. Stollings*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Gregg A. Bly, appeals from a judgment of conviction
and sentence entered by the Franklin County Court of Common Pleas. Because the trial
court did not err in denying appellant's motion to suppress, we affirm.

I. Facts and Procedural History

{¶ 2} By indictment filed December 28, 2012, appellant was charged with one
count of possession of Morphine, a third-degree felony, in violation of R.C. 2925.11; three
counts of possession of Oxycodone, fifth-degree felonies, in violation of R.C. 2925.11; and
one count of acquiring by theft an uncompleted pre-printed prescription blank used for

writing a prescription, a fifth-degree felony, in violation of R.C. 2925.23. Appellant initially entered a plea of not guilty to all five counts contained in the indictment.

{¶ 3} On April 18, 2013, appellant filed a motion to suppress all evidence and statements related to the warrantless seizure of appellant, including the search of appellant's vehicle and his subsequent arrest. The trial court conducted a hearing on appellant's motion to suppress on May 9, 2013.

{¶ 4} According to the state's evidence at the suppression hearing, Columbus Police Officers Joseph Burkey and John Narewski were on patrol during the early evening hours on October 9, 2012, sitting in traffic waiting for a vehicle in front of them to turn into the entrance that connected to Walgreens and McDonalds near Livingston Avenue west of the James Road intersection. While waiting, Officer Burkey saw appellant's truck backed into a parking space at Walgreens far from the store entrance next to a car parked facing the opposite direction. The officers then saw the man from the other car lean into appellant's truck exchanging what the officers "believed to be folded-up currency." (Tr. 17.) After the officers pulled into the parking lot, one approached appellant and the other approached the occupant of the other vehicle.

{¶ 5} Appellant notified Officer Burkey that he had a concealed carry permit and had a weapon in his center console. Appellant offered to retrieve the weapon, and Officer Burkey instructed him not to. Officer Burkey noted that appellant was shaking and nervous, there was loose money in the cup holders, and torn up sandwich baggies on the passenger floorboard. When Officer Burkey inquired about the type of gun appellant owned, appellant again asked if he should retrieve the weapon and again Officer Burkey said "no." (Tr. 32.) After further conversation, appellant reached toward the center console containing his weapon, and Officer Burkey for a third time told him not to retrieve his weapon and then asked appellant to step out of the vehicle. When Officer Burkey opened the center console of appellant's vehicle to secure the weapon, he found unlabeled pill bottles containing pills and clear baggies containing pills. Officer Burkey then placed appellant in custody.

{¶ 6} In an oral decision on May 9, 2013 and written entry on August 8, 2013, the trial court denied appellant's motion to suppress, finding a detention with reasonable suspicion based on the officers' years of experience, appellant's nervousness, appellant

repeatedly reaching toward the weapon, the location of appellant's vehicle, and empty torn baggies on the floorboard. The trial court further found that it was proper to remove appellant from the vehicle and secure the weapon.

{¶ 7} Following the trial court's denial of his motion to suppress, appellant entered a no contest plea on August 15, 2013 to each of the five counts as charged in his indictment.  In an October 3, 2013 judgment entry, the trial court found appellant guilty of the five charges and sentenced appellant to nine months in prison on the third-degree felony to run consecutive to the concurrent sentences of six months imprisonment on each of the fifth-degree felonies.  The trial court suspended the prison sentences and placed appellant on community control.  Appellant timely appeals.

## II. Assignments of Error

{¶ 8} On appeal, appellant assigns the following six errors for our review:

[1.] The findings of fact stated by the trial court in its verbal decision denying appellant's Motion to Suppress was against the manifest weight of the evidence.

[2.] The trial court only loosely applied one legal standard from *Terry v. Ohio* and misapplied that law while ignoring the law as applied to the facts determined in the hearing for appellant's Motion to Suppress.

[3.] There was insufficient justification and reasonable suspicion for an investigatory stop of appellant.

[4.] Even if there was sufficient justification and reasonable suspicion of an investigatory stop there were no articulable facts for additional intrusion.

[5.] There were no articulable facts to support probable cause to request appellant to search his vehicle.

[6.] There was no reasonable belief of guilt that existed permitting the state to conduct a warrantless search of appellant's vehicle.

### III. Standard of Review

{¶ 9} Taken together, appellant's six assignments of error challenge the trial court's denial of his motion to suppress. " 'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.) *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Here, appellant challenges both the trial court's factual findings and legal conclusions.

### IV. Discussion

#### A. Evidence Properly Considered

{¶ 10} Appellant asserts in his first assignment of error that the trial court's factual findings were against the manifest weight of the evidence. More specifically, appellant argues the trial court "ignored significant portions of the evidence." (Appellant's brief, 24.) We disagree.

{¶ 11} Appellant identifies evidence he claims the trial court should have included in its factual summary at the May 9, 2013 suppression hearing. However, appellant fails to explain how any of these facts would have changed the outcome of the hearing. Regardless, this court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *Burnside* at ¶ 8. As appellant does not challenge the competence or credibility of the evidence supporting the factual findings, and, instead, challenges only the lack of additional factual findings, we find appellant's argument unpersuasive. Therefore, appellant's first assignment of error is overruled.

#### B. Investigatory Stop and Reasonable Suspicion under *Terry*

{¶ 12} In his second, third, and fourth assignments of error, appellant challenges the trial court's application of law to the facts of this case. As these assignments of error are interrelated, we will address them jointly. Taken together, appellant's second, third,

and fourth assignments of error contend the trial court erred in determining both that an investigatory stop was warranted under these circumstances and that reasonable suspicion existed for the duration of the brief detention.

{¶ 13} The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as Article I, Section 14, of the Ohio Constitution, prohibits the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *State v. Mendoza,* 10th Dist. No. 08AP-645, 2009-Ohio-1182, ¶ 11, citing *Katz v. United States*, 389 U.S. 347, 357 (1967), superseded by statute on other grounds.  Even so, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred" within the meaning of the Fourth Amendment.  *Terry v. Ohio*, 392 U.S. 1, 19 (1968), fn. 16.

{¶ 14} Under *Terry*, a police officer may stop or detain an individual without probable cause when the officer has reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot. *Mendoza* at ¶ 11, citing *Terry* at 21. Accordingly, "[a]n investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.' "  *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, superseded by statute on other grounds, quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981).

{¶ 15} Reasonable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause."  *State v. Jones*, 70 Ohio App.3d 554, 556-57 (2d Dist.1990), citing *Terry* at 27.  Accordingly, "[a] police officer may not rely on good faith and inarticulate hunches to meet the *Terry* standard of reasonable suspicion." *Id.* at 557.  An appellate court views the propriety of a police officer's investigative stop or detention in light of the totality of the surrounding circumstances. *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus, approving and following *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus.

{¶ 16} Appellant first argues the initial investigatory stop was an unlawful seizure because the officers lacked reasonable suspicion.  Here, however, the police officers properly stopped and briefly detained appellant without probable cause because the officers had reasonable suspicion, based on specific, articulable facts, that criminal activity was afoot.

{¶ 17} First, Officer Burkey testified that he works frequently in the area where appellant was parked and that he has had hundreds of narcotics-related arrests in that area in the past five or six years.  In *Bobo,* the Ohio Supreme Court recognized that " '[t]he reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely' in determining whether an investigative stop is warranted." *Bobo* at 179 quoting *United States v. Magda*, 547 F.2d 756, 758 (2d Cir.1976).

{¶ 18} Second, the circumstances surrounding the stop must " 'be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.' " *Id.*, quoting *United States v. Hall,* 525 F.2d 857, 859 (D.C. Dist.1976). Officer Burkey had over ten years of experience with the Columbus Division of Police.

{¶ 19} Third, Officer Burkey saw a man standing in front of appellant's window handing appellant what appeared to be folded cash.  The exchange of money in a high-crime area is a specific, articulable fact that can contribute to reasonable suspicion for an investigatory stop.  *See State v. Pierce*, 125 Ohio App.3d 592, 597-98 (10th Dist.1998).

{¶ 20} Fourth, Officer Burkey testified that he recognized the manner in which appellant was parked as one commonly used during drug transactions — the cars parked driver's window to driver's window away from the entrance of the Walgreens.  Taken together, these facts are specific, articulable facts justifying Officer Burkey's belief, from the totality of the circumstances, that a narcotics transaction was occurring, and thus the initial investigatory stop was reasonable.

{¶ 21} Appellant next argues that even if the trial court properly concluded the officers had reasonable suspicion for the initial investigatory stop, there were no articulable facts for the continued seizure of appellant once Officer Burkey approached his vehicle.  It is well-established that reasonable suspicion that a detainee is engaged in criminal activity must exist for as long as the detention does. *Florida v. Royer,* 460 U.S. 491, 500 (1983).  Here, appellant was temporarily detained during an investigatory stop

that lasted only as long as the officers had reasonable suspicion, as described above, that appellant was engaged in criminal activity.

{¶ 22} Once Officer Burkey approached appellant's vehicle and spoke to appellant, Officer Burkey witnessed appellant's extreme nervousness and his inability to answer questions. Officer Burkey also observed loose cash in the cup holder and torn up sandwich baggies on the passenger side floorboard. These factors support a continued finding of reasonable suspicion while Officer Burkey stood outside appellant's vehicle.

{¶ 23} Appellant argues that when Officer Burkey approached appellant's vehicle and stood outside the driver's side door, Officer Burkey effectively seized appellant. However, there was no evidence that appellant ever asked to exit his vehicle or attempted to exit his vehicle. Accordingly, no seizure occurred until the officer removed appellant from his vehicle.

{¶ 24} Under the totality of these circumstances, we find the officers reasonably stopped appellant for investigative purposes and only detained appellant while the officers had reasonable suspicion that criminal activity was occurring. Accordingly, appellant's second, third, and forth assignments of error are overruled.

## C. Request to Search Vehicle

{¶ 25} In his fifth assignment of error, appellant argues Officer Burkey's request to search appellant's vehicle was not proper. We need not address this argument, however, as appellant refused the search. *See, e.g.*, *State v. Gardner*, 2d Dist. No. 25312, 2013-Ohio-2015, ¶ 16 (concluding that in reviewing whether the trial court properly denied appellant's motion to suppress, the appellate court need not address the appellant's argument about whether a police pat-down was permissible "[b]ecause the pat-down produced no evidence" that was the subject of the motion to suppress). Accordingly, because the evidence appellant seeks to suppress was not the result of the voluntary search request, we overrule appellant's fifth assignment of error.

## D. Removing the Weapon from the Vehicle without a Warrant

{¶ 26} Appellant's sixth and final assignment of error challenges the warrantless search of his vehicle.

{¶ 27} Having concluded that the investigative stop of appellant was proper, we must next determine whether Officer Burkey reasonably searched appellant's car. In

*Terry*, the United States Supreme Court recognized an exception to the warrant requirement, holding that a police officer may conduct a brief, warrantless search of an individual's person for weapons if the officer has a reasonable and articulable suspicion that the "individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Terry* at 24. " 'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.' " *State v. Evans,* 67 Ohio St.3d 405, 408 (1993), quoting *Adams v. Williams,* 407 U.S. 143, 146 (1972).

{¶ 28} The United States Supreme Court expanded the *Terry* warrantless search exception to protective searches of automobiles in *Michigan v. Long*, 463 U.S. 1032 (1983). Pursuant to *Long*, an officer's " 'search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.' " *Bobo* at 180, quoting *Long* at 1049.

{¶ 29} When determining whether a protective search is justified, courts apply an objective standard to determine if the " 'facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate.' " *Bobo* at 178-79, quoting *Terry* at 21-22. Applying this objective standard, courts review the totality of the circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87-88 (1991), citing *Hall* at 859.

{¶ 30} Here, Officer Burkey was justified in removing appellant from the vehicle to retrieve the weapon for officer safety. Appellant properly advised Officer Burkey that he had a concealed carry license and had a weapon in the center console of the vehicle. Appellant repeatedly asked Officer Burkey if he should retrieve the weapon and, despite Officer Burkey repeatedly telling appellant not to retrieve the weapon, appellant ultimately moved toward the weapon in a way that made Officer Burkey concerned for his safety. Applying the totality of the circumstances through the eyes of a reasonable and prudent police officer on the scene, Officer Burkey properly conducted a limited

warrantless search of appellant's vehicle in order to secure appellant's weapon. Appellant's sixth assignment of error is overruled.

## V. Conclusion

{¶ 31} Based on the foregoing reasons, the trial court did not err in denying appellant's motion to suppress. Having overruled appellant's six assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

CONNOR and O'GRADY, JJ., concur.

_____